EDWARD F. DONOHUE (SBN 112730)
JOHN T. MENO (SBN 231238)
HINSHAW & CULBERTSON LLP
One California Street, 18th Floor
San Francisco, CA 94111
Telephone: 415-362-6000
Facsimile: 415-834-9070

Attorneys for Plaintiff
EVEREST NATIONAL INSURANCE COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EVEREST NATIONAL INSURANCE COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SANTA CRUZ COUNTY BANK, a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. CaseNumber<br><br>**EVEREST NATIONAL INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF**<br><br>28 U.S.C. § 2201, *et seq.*<br>Rule 57, Fed. Rules of Civil Proc. |

COMES NOW, Plaintiff Everest National Insurance Company ("Everest"), by and through its attorneys, and alleges herein as follows:

Through this action, Everest seeks a declaration that its policy does not cover any settlement and/or judgment that is or may be entered against Santa Cruz County Bank (the "Bank "), and that Everest has no duty to defend and/or indemnify the Bank in three (3) underlying actions pursuant to a Directors and Officers Liability Policy and the Bankers Professional Liability Insuring Agreement issued to the Bank, Policy No. 8100004921-121, effective February 3, 2012 to February 3, 2015. A complete copy of the policy, including the Financial Institution Application for coverage, is attached as **Exhibit A**.

## THE PARTIES

1. Plaintiff Everest is a corporation incorporated under Delaware law having its principal place of business at 477 Martinsville Road, Liberty Corner, New Jersey.

2. Everest is informed and believes and thereon alleges that defendant Bank is a California corporation with a principal place of business in Santa Cruz, California.

3. Defendants DOES 1 through 10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Everest. When their true names and capacities are ascertained, Everest will amend this complaint by inserting their true names and capacities herein. Everest is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Everest's requested relief herein relates to such defendants.

4. Everest is informed and believes, and based thereon alleges, that at all times mentioned herein, all defendants and each of them were the agents, servants, employees, joint venturers, contractors, partners, subsidiaries or parent of the remaining defendants and each of them, and as such, were acting within the scope, course and authority of such agency, employment, joint venture and/or partnership, and with the permission, consent, authorization and ratification of the remaining defendants and each of them.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. An actual controversy within the meaning of 28 U.S.C. § 2201 also exists between the parties.

6. Venue is proper pursuant to 28 U.S.C. § 1391, because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. Specifically, this action arises from an underlying lawsuit filed in the U.S. District Court for the Northern District of California, San Jose Division, which in turn arises from claims asserted against the Bank which are alleged to have occurred within this district.

## GENERAL ALLEGATIONS

**A. Factual Background**

7. The actual controversy described herein involves a policy of insurance issued by Everest which is being called upon to defend and/or indemnify the Bank, in three (3) underlying lawsuits: (1) *Lynn Bridges et al. v. John A. Geringer, et al.*, U.S. District Court for the Northern District of California, Case No. CV13-1290 ("*Bridges*"); (2) *Raf Strudely, et al., v. Santa Cruz County Bank, et al.*, Superior Court for the State of California, County of Santa Cruz, Case No. CV181080 ("*Strudely*"); and (3) *Holly Paetau v. Santa Cruz County Bank, et al.*, Superior Court for the State of California, County of Santa Cruz, Case No. CV181473 ("*Paetau*"). A copy of the complaints filed in *Bridges*, *Strudely*, and *Paetau* are attached at **Exhibits B**, **C**, and **D**, respectively.

8. The plaintiffs in the underlying lawsuits sued several defendants, including the Bank, for damages arising out of a Ponzi scheme perpetuated by John Geringer ("Geringer") and his two partners, Christopher Luck ("Luck") and Keith Rode ("Rode"). Geringer raised in excess of $17.6 million from the underlying plaintiffs by misrepresenting the performance and strategy of his private investment fund, known as GLR Growth Fund, L.P. (the "Fund"). The complaint alleges that Geringer used false marketing materials and claimed that the fund provided yearly positive returns between 17-25% by investing in well-known stocks in the S&P 100, the NASDAQ, oil, natural gas and technology companies. The complaint alleges that the money raised was instead invested in illiquid privately held technology companies, used to fund investor redemptions and three entities owned by Geringer and his two partners.

9. As against the Bank, the complaints allege that the Bank's Vice President, Chuck Maffia ("Maffia"), knowingly participated and assisted in the Ponzi scheme by: soliciting investors and recommending Geringer as an investment manager; lending the Bank's name to the Fund's marketing materials to give the Fund legitimacy; providing references as to the Fund's legitimacy; representing that the Bank handled all of the Fund's account transactions; representing that he personally oversaw the Fund's transactions; and making other representations as to the safety and soundness of the Fund. The complaint imputes Maffia's actions to the Bank.

10. As against the Bank, the *Bridges* complaint asserts the following causes of action: (1)

Aiding and Abetting Fraud; (2) Conspiracy to Commit Fraud; (3) Aiding and Abetting Breach of Fiduciary Duty; (4) Negligent Misrepresentation; and (5) Violation of Section 12(a)(2) of the Securities Act.

11. The *Strudely* and *Paetau* complaints assert causes of action for: (1) Conspiracy to Commit Fraud; (2) Breach of Fiduciary Duty; (3) Aiding and Abetting Fraud; (4) Aiding and Abetting Breach of Fiduciary Duty; and (5) Negligent Misrepresentation.

12. The underlying complaints pray for: compensatory and general damages; economic losses; prejudgment interest; punitive damages; attorneys' fees; and costs of suit.

13. On May 24, 2012, the Securities and Exchange Commission brought a lawsuit against Geringer, Luck, Rode and their related companies for securities fraud. On February 3, 2015, final judgment was entered as to Defendants Geringer and GLR Advisors, LLC. On December 19, 2012, a federal grand jury indicated Geringer, Luck and Rode for securities fraud, mail fraud, wire fraud and money laundering. On June 4, 2014, Geringer pled guilty to Count One (conspiracy to commit mail and wire fraud), Count Two (mail fraud), and Count Twenty-Seven (wire fraud), of the indictment. On July 21, 2014, Luck pled guilty to Count One (conspiracy to commit mail and wire fraud), Count Two (mail fraud), and Count Twenty-Seven (wire fraud), of the indictment. On January 15, 2015, Luck was sentenced to 130 months in federal prison, three years of supervised release, a $300 special assessment, and $33,222,148.82 in restitution. On December 15, 2014, Rode pled guilty to Count Two (mail fraud) of the indictment. Rode's sentencing hearing is scheduled for May 18, 2015.

14. Everest in informed and believes and thereon alleges that none of three cases have been joined or coordinated.

15. Everest agreed to advance defense costs to the Bank in the *Bridges*, *Strudely* and Paetau actions, subject to a full reservation of its rights to later disclaim any duty to defend and/or indemnify and to seek reimbursement from the Bank for any and all sums expended with respect to the defense and/or indemnification of the Bank pertaining to the three actions.

**B. The Everest Insurance Policy**

16. Everest re-alleges and incorporates by reference herein each and every allegation

contained in paragraphs 1 through 15, inclusive, as though fully set forth at length herein.

17. Everest issued a Directors and Officers Liability Policy ("D&O Policy"), Policy No. 8100004921-121 to the Bank, effective from February 3, 2012 through February 3, 2015. The D&O Policy provides indemnification for demands made, or charges or causes of action filed against an insured person of the Bank. The *Bridges*, *Strudely* and *Paetau* actions involve direct actions naming only the Bank as a defendant, and neither Maffia nor any other insured person is named. Thus, the D&O Policy standing alone provides no coverage for said claims. Should the underlying plaintiffs amend the *Bridges*, *Strudely* and/or *Paetau* complaints to name an insured person as defendant, Everest reserves the right to amend this Complaint to seek declaratory relief with respect to coverage under the D&O Policy for said claims.

18. The D&O Policy was amended and adds the Bankers Professional Liability Insuring Agreement (the "BPLI Agreement") by endorsement. That endorsement provides liability coverage to the Bank according to its terms and conditions and subject to certain exclusions.

19. Certain definitions and provisions of the D&O Policy are incorporated by reference in the BPLI Agreement. When appropriate, the D&O Policy and BPLI Agreement are discussed and referred to herein under those names, separately. In other instances, and generally, the D&O Policy and the BPLI Agreement are discussed and referred to herein as the "D&O/BPLI Policy".

20. The D&O/BPLI Policy is a claims-made "indemnity" policy, which expressly disclaims any duty to defend. Under said policy, Everest's duty to indemnify the Bank for any liability incurred as a result of a judgment against it or a settlement, assuming there is coverage, arises at the earliest when a judgment is entered against the Bank or when the Bank enters into a settlement to which Everest has previously consented.

21. The insuring agreement for D&O/BPLI Policy contains the following relevant insuring language:

**DIRECTORS & OFFICERS LIABILITY POLICY**

**<u>IMPORTANT NOTICE</u>: This is a claims-made policy. Defense Costs are included within the Limit of Liability. Amount incurred as Defense Costs will**

**reduce the Limit of Liability available to pay judgments or settlements. Please read this Policy carefully.**

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declaration and **Application**, the **Insurer** and the **Insured** agree that coverage will be provided subject to all of the terms, conditions and limitations of this **Policy**, as follows:

**SECTION I – INSURING AGREEMENTS**

It is understood and agreed that coverage will not be provided under any Insuring Agreement unless a Limit of Liability, Retention and premium for such Insuring Agreement are set forth in the Declarations.

A. <u>INSURED PERSONS LIABILITY COVERAGE</u> – The **Insurer** will pay on behalf of the **Insured Persons**, **Loss** resulting from **Claims** first made during the **Policy Period** or the Discovery Period against the **Insured Persons** for **Wrongful Acts** for which the **Insured Persons** are legally obligated to pay, except for **Loss** the **Company** pays as indemnification.

B. <u>COMPANY INDEMNIFICATION COVERAGE</u> – The **Insurer** will pay on behalf of the **Company**, **Loss** resulting from **Claims** first made during the **Policy Period** or the Discovery Period against the **Insured Persons** for **Wrongful Acts** for which the **Company** has agreed to or is legally permitted or required by law to indemnify the **Insured Persons**.

* * * *

22. The D&O Policy contains the following relevant definitions:

**SECTION IV – DEFINITIONS**

**<u>Application</u>** means:

(1) the application signed for the procurement of this **Policy** and any materials submitted to the **Insurer** in support of the procurement of this **Policy** or any **Policy** for which this **Policy** is a direct or indirect renewal or replacement; and

(2) any publicly available information published or filed by or with a recognized source, agency or institution regarding the **Insured** in the three (3) years preceding the **Policy's** inception, and any amendments thereto, whether or not submitted with any signed application.

The **Application** is deemed to be attached to and incorporated into this **Policy**, as if physically attached.

**<u>Claim</u>**, either in singular or plural, means any of the following instituted against an **Insured Person** or against the **Company**, but only to the extent coverage is granted to the **Company**:

(1) a written or oral demand for monetary damages or non-monetary relief;


(2) a civil proceeding commenced by the service of a complaint or similar pleading;

(3) a criminal proceeding commenced by a return of an indictment;

(4) an arbitration or mediation proceeding in which monetary damages are sought;

(5) a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document; or

(6) a written request to toll or waive a statute of limitations, relating to a potential Claim described in Subsections (1) through (5) above,

for a **Wrongful Act** including any appeal from such proceeding.

**Company** means the entity or entities set forth in Item 1 of the Declarations, any **Subsidiary** created or acquired as of the inception date set forth in Item 2 of the Declarations, and, subject to Section XI (B), any bank **Subsidiary** created or acquired during the **Policy Period**.

**Defense Costs** means reasonable and necessary legal fees and expenses incurred in defending or investigating any **Claim** and the cost of appeal, attachment or similar bonds. **Defense Costs** shall not include salaries, wages, overhead, or benefit expenses incurred by the **Insured**.

**Insured**, either in singular or plural, means the **Insured Persons** or the **Company**, if coverage for the **Company** is set forth by Insuring Agreement made part of this **Policy**.

**Insured Person**, either in singular or plural, means any past, present or future director, member of the board of trustees, officer, **Employee**, honorary or advisory director, or honorary or advisory member of the board of trustees of the **Company**.

**Interrelated Wrongful Acts** means **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions.

**Wrongful Act**, either in singular, or plural, means any actual or alleged error, omission, misstatement, misleading statement, neglect or breach of duty by:

(1) any **Insured Person** in the discharge of their duties while acting solely in the capacity as such;

(2) any **Insured Person** while acting solely in the capacity as director, officer, or member of the board of trustees of a not-for-profit entity pursuant to Section II (B); or

(3) the **Company** or any person or entity for which the **Company** is legally responsible, but only to the extent that coverage is granted to the **Company** by Insuring Agreement made a part of this **Policy**.

**Loss** means **Defense Costs** and any amount which the **Insured** is legally obligated to pay resulting from a **Claim**, including damages, judgments, settlements, and pre- and post-judgment interest. **Loss** shall also include punitive or exemplary damages and

the multiple portion of any multiplied damage award where insurable by law. **Loss** shall not include:

(1) taxes;

(2) criminal or civil fines or penalties imposed by law;

(3) any unpaid, unrecoverable or outstanding loan, lease or extension of credit to any customer or any forgiveness of debt;

(4) costs to comply with any non-monetary or injunctive relief of any kind or any agreement to provide such relief, including but not limited to any damages, costs or expenses incurred in making an accommodation for any disabled person pursuant to the Americans with Disabilities Act or any similar federal, state or local laws, or in complying with any other federal, state or local laws of any kind;

(5) any amounts the **Company** is obligated to pay pursuant to any express written or oral contract or agreement existing prior to the date the **Claim** was made;

(6) the depreciation (or failure to appreciate) in value of any investment product, including but not limited to securities, commodities, currencies, options or futures due to market fluctuation unrelated to any **Wrongful Act**;

(7) any restitution, disgorgement, or payment of similar payments including but not limited to the return of fees, commissions or charges for the **Company's** services; or

(8) any matters which are uninsurable under the law pursuant to which this **Policy** shall be construed.

The definition of "Loss" was amended by California Amendatory Endorsement, form EEO 41 151 CA (12 10):

**EVEREST NATIONAL INSURANCE COMPANY**
**California Amendatory Endorsement**
Policy Number: 8100004921-121

In consideration of the premium paid and in reliance upon all statements made and information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that the Policy is amended as follows:

1. The definition of **Loss** is amended as follows:

Notwithstanding any other provision, the definition of **Loss** shall not include punitive or exemplary damages or the multiple portion of any multiplied damage award. The remainder of the definition of **Loss** shall remain unchanged.

* * * *

23. The D&O/BPLI Policy contains the following relevant terms with respect to the

defense and settlement of any claim, and allocation of loss to covered and uncovered claims:

SECTION VIII – DEFENSE AND SETTLEMENT

A. NO DUTY TO DEFEND

(1) Amounts incurred as **Defense Costs** will reduce and shall be part of and not in addition to the applicable Limits of Liability. It shall be the duty of **Insured** and not the duty of the **Insurer** to defend **Claims**. The **Insured** shall only retain counsel that is mutually agreed upon with the **Insurer**, consent for which shall not be unreasonably withheld.

(2) Subject to Section IX, the **Insurer**, if requested by the **Insured**, shall advance covered **Defense Costs** on a current basis, except when advancement of **Defense Costs** is prohibited by law or regulation. The **Insured** shall repay any advanced **Defense Costs** to the **Insurer** in the event it is established that the **Insurer** has no liability under this **Policy** for such **Defense Costs**.

B. ADVANCEMENT OF DEFENSE COSTS

(1) Subject to Section IX, the **Insurer**, if requested by the **Insured**, shall advance covered **Defense Costs** on a current basis, except when advancement of **Defense Costs** is prohibited by law or regulation. The **Insured** shall repay any advanced **Defense Costs** to the **Insurer** in the event it is established that the **Insurer** has no liability under this **Policy** for such **Defense Costs**.

* * * *

SECTION IX – ALLOCATION AND ARBITRATION

A. ALLOCATION

(1) If in any **Claim** the **Insureds** are jointly and severally liable with others (including the **Company** even if no coverage is extended for such **Claim** against the **Company**) for **Loss**, then:

(a) 100% of all **Loss**, other than **Defense Costs**, incurred jointly by the **Insured Persons** and the **Company** shall be treated as **Loss** incurred solely by the **Insured Persons**; and

(b) all other **Loss** shall be allocated between the **Insured Persons** and others based on the relative legal exposures of the parties to such **Claims**.

(2) If in any **Claim** the **Insureds** incur an amount consisting of both covered and uncovered **Loss** because the **Claim** includes both covered and uncovered matters, then the amount shall be allocated between covered **Loss** and uncovered loss based on the relative legal exposures of the **Insureds** to the covered and uncovered matters.

B. ARBITRATION – The **Insurer** and the **Insured** agree to use their best efforts to reach a proper allocation of **Defense Costs**. If the **Insured** and the

**Insurer** cannot agree on an allocation:

(1) no presumption as to allocation shall exist in any arbitration, suit or other proceeding;

(2) the **Insurer** shall advance on a current basis **Defense Costs** which the **Insurer** believes to be covered under this **Policy** until a different allocation is negotiated, arbitrated or judicially determined; and

(3) the **Insurer**, if requested by the **Insured**, shall submit the allocation dispute to binding arbitration. The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel. The arbitration panel shall consist of one arbitrator selected by the Insured, one arbitrator selected by the **Insurer**, and a third independent arbitrator selected by the first two arbitrators. In any such arbitration, each party will bear its own legal fees and expenses.

Any negotiated, arbitrated or judicially determined allocation of **Defense Costs** will be applied retroactively to all **Defense Costs**, notwithstanding any prior advancement to the contrary. Any allocation or advancement of **Defense Costs** shall not apply to or create any presumption with respect to the allocation of other **Loss** arising from such **Claim** or any other **Claim**.

24. A Bankers Professional Liability Insuring Agreement adopts, amends, and/or adds certain terms, conditions and exclusions with respect to the D&O/BPLI Policy:

**EVEREST NATIONAL INSURANCE COMPANY**
**BANKERS PROFESSIONAL LIABILITY INSURING AGREEMENT**
Policy Number: 8100004921-121

In consideration of the premium paid and in reliance upon all statements made and the information contained in the Declarations and **Application**, the **Insurer** and the **Insured** agree that coverage will be provided subject to all of the terms, conditions and limitations of this Insuring Agreement, as follows:

1. The attached **Policy** is amended by adding an additional Insuring Agreement as follows:

**BANKERS PROFESSIONAL LIABILITY INSURING AGREEMENT**

The **Insurer** will pay on behalf of the **Insured**, **Loss** resulting from **Claims** first made during the **Policy Period** or Discovery Period, brought by or on behalf of a customer of the **Company**, against the **Insured** for which the **Insured** is legally obligated to pay for **Wrongful Professional Services Acts**.

2. For the purpose of the coverage afforded by this Insuring Agreement, all of the terms and conditions set forth in the Policy and any amendments thereto shall apply except:

A. Section II (B), entitled "Not-for-Profit Directorships", is deleted.

B.     The definitions of **Interrelated Wrongful Acts** and **Wrongful Act** and all references used throughout the Policy are deleted and replaced as follows:

**Interrelated Wrongful Professional Services Acts** means **Wrongful Professional Services Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of related facts, circumstances, situations, events or transactions.

**Wrongful Professional Services Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by any Insured in the rendering or failure to render **Professional Services**.

C.     Section IV, entitled "Definitions", is further amended to add the following:

**Professional Services** means only those services performed or required to be performed by an Insured for or on behalf of a customer of the **Company**:

(1)     for a fee, commission or other monetary compensation;

(2)     where a fee, commission or other monetary compensation would usually be received by the Insured but for business or other reasons is waived by the Insured; or

(3)     for other remuneration which inures to the benefit of the Insured.

**Professional Services** does not include: (i) medical or health care services; (ii) real estate appraisal service; (iii) architectural or construction management services; (iv) the practice of law or the rendering of legal services; (v) the rental of a safe deposit box; (vi) services provided to customers as an enrolled actuary as that term is used in or in connection with ERISA; and (vii) any services performed by or for any entity to which the Insured shall have acquired ownership or control as security for a loan, lease or other extension of credit.

D.     All of the exclusions set forth in Section V, entitled "Exclusions Applicable to all Insuring Agreements", shall apply except the "Brokerage/Advisory Services Exclusion" and "Insurance Services Exclusion" which are deleted.

E.     Section V, entitled "Exclusions Applicable to all Insuring Agreements", is further amended to add the following:

**Investment Banking/Securities Underwriting Exclusion** - The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** arising out of or in any way involving:

(1)     underwriting, syndicating or *promoting any security* (except loan syndications or equity or debt securities issued by the **Company**);

    (2)    *rendering of advice or recommendations regarding any actual or attempted* or threatened merger, acquisition, divestiture, tender offer, proxy contest, leveraged buy-out, going private transaction, bankruptcy, reorganization, restructuring, recapitalization, spin-off, *offering of securities*, dissolution or sale of all or substantially all of the assets or stock of an entity;

    (3)    rendering of any fairness opinion;

    (4)    proprietary trading;

    (5)    any acquisition or sale of securities of the Company for its own account; or

    (6)    any other investment banking activity,

including any disclosure requirements in connection with any of the foregoing. (italics added)

**B.    Insurance Coverage**

25.    Everest re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 24, inclusive, as though fully set forth at length herein.

26.    The Bank tendered its claim for defense and indemnity of the *Bridges* action to Everest under the D&O/BPLI Policy. Everest denied the Bank's claim reserving all rights under the policy and at law.

27.    In November 2014, the Bank initiated arbitration proceedings on the *Bridges* claim pursuant to Section IX.B. of the D&O/BPLI Policy, which provides for arbitration should Everest and the Bank disagree on the allocation of defense costs. In the arbitration proceedings, the Bank is seeking to arbitrate not only the allocation of defense costs, but also coverage and extra-contractual remedies. Everest objected to the arbitration panel's jurisdiction to arbitrate the coverage and damages issues, and a hearing is set to determine the panel's jurisdiction.

28.    The *Strudely* and *Paetau* actions were subsequently filed on February 17, 2015, and April 29, 2015, respectively, in the Superior Court of California, County of Santa Cruz.

29.    Everest determined that the *Bridges*, *Strudely* and *Paetau* claims arise out of the same alleged investment fraud scheme. Under the D&O/BPLI Policy, they are considered a single claim. In light of this and Everest's further investigation, Everest agreed to advance defense costs to the Bank in all three actions, subject to a full reservation of its rights to later disclaim any duty to defend

and/or indemnify and to seek reimbursement from the Bank for any and all sums expended with respect to the defense and/or indemnification of the Bank.

30. The Bank maintains that Everest's initial decision to deny its claim in *Bridges* was in bad faith. Thus, significant coverage and extra-contractual issues exist regarding the allegations and causes of action against the Bank.

31. Everest alleges that it has no duty to defend and/or indemnify the Bank with respect to the *Bridges*, *Strudely* and *Paetau* actions because these actions do not seek **Loss** resulting from **Wrongful Professional Services Acts**, as those bolded terms are defined in the D&O/BPLI Policy.

32. Everest alleges that it has no duty to defend and/or indemnify the Bank with respect to the *Bridges*, *Strudely* and *Paetau* actions because all claimed loss is excluded by operation of one or more exclusions in the D&O/BPLI Policy including but not limited to the Investment Banking/Securities Underwriting Exclusion, set forth above.

33. Everest alleges that it has no duty to defend and/or indemnify the Bank with respect to the *Bridges*, *Strudely* and *Paetau* actions because the allegations of the complaints of intentional acts are excluded under the D&O/BPLI Policy and uninsurable as a matter of law.

34. Everest alleges that it has no duty to defend and/or indemnify the Bank with respect to the *Bridges*, *Strudely* and *Paetau* actions because the allegations of the complaints of entitlement to punitive and/or exemplary damages are excluded under the D&O/BPLI Policy and uninsurable as a matter of law.

35. Everest alleges that it has no duty to defend and/or indemnify the Bank with respect to the *Bridges*, *Strudely* and *Paetau* actions by virtue of other provisions of the D&O/BPLI Policy, including the fully incorporated Financial Institution Application for coverage and applicable law.

36. Everest hereby incorporates by reference all of Everest's prior reservation of rights letters respecting coverage related to the *Bridges*, *Strudely* and *Paetau* claims. Everest reserves all rights as set forth therein under the D&O/BPLI Policy and at law to assert any additional exclusions and coverage limitations for said claims. Should facts be discovered and/or circumstances change by which additional exclusions and/or coverage limitations apply, Everest reserves the right to amend this Complaint to assert such additional grounds for declaratory relief.

**FIRST CAUSE OF ACTION**

(For Declaratory Relief Against All Defendants)

37. Everest re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 36, inclusive, as though fully set forth at length herein.

38. Everest alleges that it has no duty to defend and/or indemnify the Bank in relation to the *Bridges*, *Strudely* and *Paetau* actions.

39. Everest alleges that, should it be found that Everest does not have a duty to defend and/or indemnify the Bank in relation to *Bridges*, *Strudely* and *Paetau* actions, which duty or duties it denies, Everest would be entitled to reimbursement from the Bank for any amounts paid.

40. Everest is informed and believes, and thereon alleges, that the Bank disputes that Everest has no duty to defend and/or indemnify it in relation to the *Bridges*, *Strudely* and *Paetau* actions, or that the Bank would have to reimburse Everest for any amounts paid, and, further, that the Bank contends to the contrary.

41. An actual controversy has arisen and now exists between Everest, on the one hand, and the Bank, on the other hand, regarding the respective rights, duties and obligations of each with respect to defense, indemnity and/or reimbursement in relation to *Bridges*, *Strudely* and *Paetau* actions.

42. Everest requests that this court judicially determine and declare the respective rights, duties and obligations of the parties with respect to the defense and/or indemnity of the Bank, and the Bank's obligation for reimbursement, in relation to *Bridges*, *Strudely* and *Paetau* actions.

**PRAYER FOR RELIEF**

WHEREFORE, Everest prays for relief as follows:

A. That the court determine the rights, duties, obligations and liabilities of Santa Cruz County Bank, and Everest as to any obligation to defend, indemnify and/or reimburse with regard to the *Bridges*, *Strudely* and *Paetau* actions;

B. For a declaration that Everest has no obligation to defend and indemnify Santa Cruz County Bank with regard to the *Bridges*, *Strudely* and *Paetau* actions;

C. For a declaration that Santa Cruz County Bank is obligated to reimburse Everest for any amounts paid to defend and/or indemnify the Santa Cruz County Bank with regard to the *Bridges*, *Strudely* and *Paetau* actions;

E. For costs of suit incurred herein; and

F. For such other and further relief as the court deems just and proper.

DATED: May 8, 2015

HINSHAW & CULBERTSON LLP

By: ______________________

EDWARD F. DONOHUE
JOHN T. MENO
Attorneys for Plaintiff
EVEREST NATIONAL INSURANCE COMPANY